## Frazier v. Louisville & Nashville Railroad Company.

(Decided October 15, 1929.)

ASTOR HOGG and STEPHENS COMBS, Jr., for appellant.

MORGAN & HARVIE, D. I. DAY, ASHBY M. WARREN and C. S. LANDRUM for appellee.

OPINION OF THE COURT BY JUDGE WILLIS—Affirming.

S. H. Frazier instituted an action against the Louisville & Nashville Railroad Company to recover damages for injuries to his property, caused, as he alleged, by the

negligence of the railroad company. Frazier's farm contains about 165 acres, and both the railroad and a creek known as Old House Branch run through it. The railroad constructed a fill or embankment in front of plaintiff's residence and, a culvert under the fill to carry the natural flow of the water in the creek. The house and railroad track were practically on the same level. In May, 1927, there was an extraordinary rainfall in that section of the country, and great damage was done to property along the streams. Large quantities of driftwood and other debris stopped the mouth of the culvert near Frazier's house and piled up in the creek for some distance from the railroad. It was alleged that the railroad company carelessly and negligently permitted that condition to remain for an unreasonable length of time, and that on the 2d of July, 1927, another heavy rainfall came, and, by reason of the culvert being closed with the deposit described, the water was diverted from its natural course and overflowed plaintiff's premises, thereby injuring his household goods and. other property. The railroad company denied any negligence or injury caused by any act of itself or its servants, and in a second paragraph of its answer pleaded that both rains were so extraordinary and unusual as to be entirely beyond control, and that all the damage was caused by the extraordinary rainfalls and not by any neglect of duty on the part of defendant. In an amended answer tendered by the railroad company, but which was not allowed to be filed, it was pleaded that the plaintiff himself had failed to clear his property of driftwood and debris. and that the obstruction complained of was caused by his own failure to remove the obstruction, and that thereby his own conduct caused the injury complained of and but for which it would not have occurred.

The case was tried before a jury, and at the conclusion of the evidence defendant entered a motion for a peremptory instruction, but the court withheld its ruling. The defendant then offered its testimony, and the plaintiff in turn introduced some rebuttal evidence. At the conclusion of all the testimony the court sustained the motion for a peremptory instruction and directed the jury to return a verdict for the defendant, which was accordingly done. A new trial was requested and refused, and the plaintiff has appealed.

It is argued on behalf of appellee that the motion and grounds for a new trial were not filed in time, thus

precluding from review all questions except the sufficiency of the pleadings to support the judgment. A motion for a new trial must be made at the term at which the verdict or decision is rendered, and, except for newly discovered evidence (Civil Code, sec. 340, subsec. 7), must be made within three days after the verdict or decision is rendered, unless unavoidably prevented (Civil Code, sec. 342). The verdict in this case was returned on Thursday, May 31st, and it appears that the motion for a new trial was not made until Monday, June 4, 1928. If this was all that appeared, the contention of appellee would be sound (Witt v. L. & E. Ry. Co., 158 Ky. 401, 165 S. W. 399; Seiler v. Gilley Bros. & Co., 108 S. W. 284, 32 Ky. Law Rep. 1275), but such is not the fact. When the plaintiff discovered what the record showed respecting the filing of his motion and grounds for a new trial, he caused a notice to be served upon the railroad company for the purpose of having entered as of June 1, 1928, an order filing his motion on that date. A hearing was had on the motion, and the court entered an order correcting the record and filing the motion and grounds for a new trial as of June 1, 1928. The action of the court was rested upon record evidence in the case. The minute book of the proceedings for June 1, 1928, contained a notation that appellant's motion and grounds for a new trial had been filed and overruled. On the record before it the court was justified in correcting its orders to conform to the facts. It is well settled that a judgment or order may be entered nunc pro tunc to supply something which actually occurred in court, but which was omitted from the permanent record. A court may not supply a record of action that was not taken, or supply in that manner written evidence of action which was taken, but of which no record evidence was preserved. Jett v. Farmers' Bank, 76 S. W. 385, 25 Ky. Law Rep. 817. But when there is record evidence showing substantially what was done and omitted from the final record, the correction should be made. Ralls v. Sharp's Adm'r, 140 Ky. 744, 131 S. W. 998; Kendrick v. Williams, 157 Ky. 767, 164 S. W. 72; Hoffman v. Shuey, 223 Ky. 70, 2 S. W. (2d) 1049, 58 A. L. R. 842. The record in this case was sufficient to authorize the court to make the order nunc pro tunc. Chester v. Graves, 159 Ky. 244, 166 S. W. 998, Ann. Cas. 1915D, 678; Monarch v. Brey, 106 Ky. 688, 51 S. W. 191, 21 Ky. Law Rep. 279.

Appellant insists that the court incorrectly instructed the jury to find for the defendant. That depends upon the fact whether there was any evidence to sustain the cause of action alleged by the plaintiff. When the facts proven, and the inferences reasonably arising therefrom, tend to support the cause of action asserted the case should be submitted to the jury. Sydnor v. Arnold, 122 Ky. 557, 92 S. W. 289, 28 Ky. Law Rep. 1250; Meade v. Ashland Steel Co., 125 Ky. 114, 100 S. W. 821, 30 Ky. Law Rep. 1164; Chesapeake & O. R. Co. v. Conley, 136 Ky. 601, 124 S. W. 861; Terrell v. Southern Ry. Co., 225 Ky. 645, 9 S. W. (2d) 993. It is conceded that the railroad company was not responsible for the conditions resulting from the extraordinary flood which occurred on the 29th of May, 1927. The contention is that the railroad company was negligent thereafter in failing to clean out the debris before the second rain of July 2, 1927. It is argued that the railroad company had to anticipate that another flood might come within that short period and that damage might be expected therefrom unless the culvert was cleaned out. It is significant that Frazier himself did not take any steps to clear his own property. He did not remove the debris from his own premises, and he did not demand that the railroad company do anything more than it did. It appears that the railroad company had suffered serious property injury by the flood, and its section men were putting forth strenuous efforts to keep the railroad in condition for trains to run. The culvert was opened so that the water would pass through, but they had not had time to clear away all the debris that had been collected. The rain on July 2d was lighter than the previous one, but on account of the filled condition of the channel it spread out over Frazier's property and got in his house inflicting serious damage upon him. The water ran over the railroad. The damage done by the second flood was said to have been greater than that inflicted by the first. After the May flood Frazier continued to live in his house, but after the overflow in July he was compelled to move from the premises. There can be no doubt that the railroad company was not to blame for the sudden obstruction of the culvert, or for the great mass of debris that was carried there by the extraordinary floods. The question narrows to the single inquiry whether there was sufficient evidence of neglect in cleaning out the culvert, proximately resulting in injury to Frazier, to carry the case to the jury. The

culvert was immediately cleaned out to an extent enabling the water reasonably to be expected at that season of the year to flow through it. But when the second rain occurred 33 days thereafter the opening was not large enough to carry off the water. The railroad company had sent several men there to clean out the culvert and they had worked several days at the task. They forced an opening through the culvert large enough for the men to go through and ample to take care of the ordinary flowage in that stream. The opening in the culvert originally was only four feet wide, and of the same height. Appellant testified that the opening was not large enough for the water to go through to amount to anything, but he admitted that there was an opening large enough to carry the water until the great rainfall that unexpectedly came on July 2d. That tide carried but little wooden waste, but, what is much more significant, it brought upon the premises large quantities of sand and stone. The May flood had carried out all the logs and brush so that but little drift of that character was left. Yet the violence of the July waters carried sand and stone and deposited them on Frazier's farm. The nature of the damage done by the two floods clearly indicates that the latter one was the more destructive of the two. The fact remains that appellee had done nothing to cause the damage to the property of appellant. The sole complaint is that it had not cleaned up the result of the previous rain. It was under no duty to do so immediately and at all hazards, but its duty in that respect was measured by the requirements of ordinary care under the circumstances. If the railroad company had removed entirely all the debris that was lodged on its right of way, it is not apparent that the damage suffered by appellant would have been lessened or averted. It could not reasonably be claimed that its duty extended beyond those limits. It was not responsible for the drift that had lodged on the property of plaintiff, and which he had failed to clear away. Chesapeake & O. Ry. Co. v. Adkins, 167 Ky. 329, 180 S. W. 517. If the railroad company could be held liable to appellant for its failure to clean out the debris on its premises, by a parity of reasoning appellant would be liable to any one injured because he had failed to clear his own property. But the law imposes no such duty upon a lower proprietor under the facts manifested by this record. Appellant failed to offer any evidence tending to show a negligent breach of any duty owed him by

the appellee, or that his injuries were traceable to any cause for which the railroad company was legally liable.

Our consideration of the record leads us to the conclusion that the circuit court ruled rightly when it directed a verdict for the defendant.

The judgment is affirmed.