# Chesapeake & O. Ry. Co. v. Carmichael.

Dec. 8, 1944.

Howe & Clay, and Hunt, Bush & Lisle for appellant.

Reid Prewitt and F. C. Bryan for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Reversing.

The Chesapeake and Ohio Railway Company has moved for an appeal from a judgment for $200 against it in favor of William Carmichael for damages alleged to have been caused his growing crops and fences by the negligence of the Railway Company in failing to keep open a drainage ditch and thereby permitting water to

flow upon and flood his property. The motion is sustained and appeal granted.

The railroad runs east and west adjacent to plaintiff's property on the north. South of and parallel with the right of way is Stepstone Creek, which in normal times is small and shallow. Beyond that is a county road, and a fenced private way leads from it across the railroad into the plaintiff's farm. The creek and surface water flow eastwardly. The track is upon a three or four foot embankment and has the usual drainage ditch paralleling the track, between it and plaintiff's property, which also carries some surface water from a part of his land. Four culverts carry the water from this ditch under the track to where it flows a few feet into the creek. The bottom of the culverts is three or four feet above the bed or normal height of the water in the creek. The water must rise seven feet before it reaches the top of these culverts and stops or obstructs the drainage.

On the night of June 21, 1942, there was a heavy rainfall beginning about nine o'clock and lasting two or three hours. The creek overflowed the railroad and onto plaintiff's land for a considerable distance. It was two or three feet deep over the tracks and washed the ballast and roadbed for a distance of three miles to such extent that it took eleven days to repair the damage. The plaintiff testified that his wife woke him up about midnight and he saw water about thirty feet up in his place. He dressed and went down to the railroad and saw the ballast was washed out and the ties hanging to the rail. He testified that he had seen overflows at the place twice before, but not such property damage as on this occasion. His garden patch was ruined and a field of corn washed toward the east and covered with mud and debris. His fences had been knocked down toward the east and his private road washed out. The plaintiff only proved that the ditch paralleling the railroad had been permitted to fill up before this flood.

As often stated, the negligence for which the law imposes liability presupposes a legal duty, coupled with an injury resulting in direct and natural sequence from a breach of it. The court submitted to the jury the question of the defendant's negligence with respect to the drainage ditch and whether it had become inadequate to carry off the water in usual and ordinary floods and

rainfalls in the vicinity and that such negligence had caused the plaintiff's damage. A special, separate instruction was given which authorized the jury to excuse the defendant from liability if the jury believed the damage was caused by unusual and extraordinary rain and flood.

It is well established law that where damage is caused by a superior agency and without fault on the part of a defendant, or blame imputable to him, an action for damages is not maintainable.

It is tacitly conceded on the appeal that this rain and flood was of such an extraordinary degree and character as to be regarded as an act of God. But the appellee contends that the Railway Company should not have been permitted on the trial and may not now be permitted to rely upon the defense of vis major because it was not pleaded.

There is little authority on the question of whether an act of God must be specially pleaded as a defense. In 41 Am. Jur., Pleading, Sec. 159, it is stated that such an affirmative or special plea is required if the defendant expects to avail himself of that defense. Chicago, R. I. & P. R. Co. v. Shaw, 63 Neb. 380, 88 N. W. 508, 56 L. R. A. 341, is cited as authority. That case is also cited in support of a similar text in 45 C. J. 1113. But the opinion seems to hold that an instruction on that defense was properly refused because there was neither pleading nor proof. However, it is held in Oklahoma and Montana that the defense must be specially pleaded; but in Maryland that it does not, and that the defense may be relied upon under the general issue. Sand Springs Railway Company v. Baldridge, 60 Okl. 102, 159 P. 487; Orient Ins. Company v. Northern Pacific Railway Company, 31 Mont. 502, 78 P. 1036; Gault v. Humes, 20 Md. 297.

It seems to us that, in order to introduce evidence that it was, there need be no affirmative or special plea that the flooding of plaintiff's property was caused by an act of God, and that it is sufficient for the defendant to deny that the damage was caused by his negligence. If a plaintiff may plead negligence in general terms and prove any negligent act, so may a defendant deny negligence generally and prove anything relevant to show that the claimed damage was not caused by him but was caused by a third person or his instrumentality. By a

general denial the defendant puts the burden upon the plaintiff to prove his case, and in response the defendant ought to be permitted to point to some other cause of the plaintiff's injury. To illustrate: A sues B and alleges that his automobile struck and injured the plaintiff. It could not be doubted that under a general traverse B could prove that it was not his car but one in front of him that struck the plaintiff. That may be regarded as an affirmative defense, but it is not new matter. It simply buttresses the defendant's denial. As stated in 41 Am. Jur., Pleading, Sec. 366:

"A general denial puts in issue every material allegation of the complaint, except those admitted. It goes to the root of the cause of action and permits the introduction of any proper evidence tending to controvert the facts which the plaintiff must establish to sustain his case. Any fact which goes to destroy, not to avoid, the plaintiff's cause of action is provable under the general denial, including facts independent of those averred in the complaint, of an affirmative character, but which have a negative effect upon the issues."

See also 45 C. J. 1141; 67 C. J. 732. That rule of admissibility was applied in Big Hill Coal Company v. Abney's Adm'r, 125 Ky. 355, 101 S. W. 394; and Scott v. O'Brien, 129 Ky. 1. 110 S. W. 260, 16 L. R. A., N. S., 742, 130 Am. St. Rep. 419. So in a case of this kind the defendant may not only contradict evidence that he was in fault but may prove that an instrumentality of another neighbor or an unprecedented flood caused the plaintiff's damage and not he. That is not a confession and avoidance, which is generally the character of defense that must be pleaded specially.

There is no difficulty in reaching the conclusion that evidence on the point was relevant and competent. It is very apparent that the failure of the Railway Company to keep open its drainage ditch alongside the track had nothing to do with the flooding of plaintiff's property. It would have occurred had that ditch been five feet deep and clear and clean, for, as we have said, the water covered all the right of way and extended beyond over plaintiff's land in the same way several feet deep. It ran in a swift current down the valley.

We need not here express an opinion as to whether a defendant is entitled to a special instruction on an act

of God or unprecedented rain as the efficient cause of plaintiff's damage if he does not plead it specially. The point upon which we decide the case is the evidence, and that evidence was such as to require, in our opinion, that the court peremptorily instruct the jury to find for the defendant.

Wherefore the judgment is reversed.

Whole Court sitting.